**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | |
|---|---|
| JASON JOHNSON | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    No. _____ |
| | ) |
| KNOX COUNTY, TENNESSEE, | ) |
| JOHN AND JANE DOE PHYSICIAN, | ) |
| DONALD KEEBLE, M.D., STEVEN MINTON, | ) |
| MARGARET MCINTOSH, JULIE NEWMAN, | ) |
| MACEY HOLT, MARTHA HARRIS, | ) |
| TYESHA ROBINSON, JOHN AND JANE DOE | ) |
| PHYSICIAN, JOHN AND JANE DOE NURSES, | ) |
| JOHN AND JANE DOE DEPUTIES, AND | ) |
| JOHN AND JANE DOE JAILER/GUARDS, | ) |
| | ) |
|       Defendants. | ) |

---

## COMPLAINT

---

Comes the Plaintiff, Jason Johnson (hereinafter "Mr. Johnson" or "Plaintiff"), by and through counsel, and sues the Defendants for the violation of his federal constitutional rights pursuant to 42 U.S.C. § 1983, for his attorney fees and costs pursuant to 42 U.S.C. § 1988, and for his cause of action claims and alleges as follows:

### I. PARTIES

1.  Plaintiff, Jason Johnson, is a citizen and resident of Knox County, Tennessee.

2.  The Defendant Knox County is a governmental entity established by the State of Tennessee and is a "person" subject to suit pursuant to 42 U.S.C. § 1983. This Defendant may be

1

served through its County Mayor Glenn Jacobs, City-County Building Suite 615, 400 Main Street Knoxville, Tennessee 37902.

3.      The Defendant, Steven Minton, is a healthcare provider/nurse employed by Defendant Knox County, Tennessee.  He is sued individually and in his official capacity.  Upon information and belief, this defendant examined Plaintiff on February 23, 2020.

4.      The Defendant, Margaret McIntosh, is a healthcare provider/nurse employed by Defendant Knox County, Tennessee.  She is sued individually and in her official capacity.  Upon information and belief, this defendant examined Plaintiff on February 23, 2020.

5.      The Defendant, Macey Holt, is a healthcare provider/physician's assistant employed by Defendant Knox County, Tennessee.  She is sued individually and in her official capacity.  Upon information and belief, this defendant examined Plaintiff on February 26, 2020.

6.      The Defendant, Julie Newman, is a healthcare provider/nurse employed by Defendant Knox County, Tennessee.  She is sued individually and in her official capacity.  Upon information and belief, this defendant examined Plaintiff on March 2, 2020.

7.      The Defendant, Martha Harris, is a healthcare provider/nurse employed by Defendant Knox County, Tennessee.  She is sued individually and in her official capacity.  Upon information and belief, this defendant examined Plaintiff on March 9, 2020.

8.      The Defendant, Tyesha Robinson, is a healthcare provider/nurse employed by Defendant Knox County, Tennessee.  She is sued individually and in her official capacity.  Upon information and belief, this defendant examined Plaintiff on April 11, 2020.

9.      The Defendant, Donald Keeble, M.D., is a physician employed by Defendant Knox County, Tennessee.  He is sued individually and in his official capacity.  Upon information and

2

belief, this Defendant was a collaborating physician who examined Plaintiff intermittently between February 10, 2020 and April 20, 2020 as detailed below. The dates of this Defendant's examinations of the Plaintiff are unknown to Plaintiff at this time but it will be identified in accordance with Federal Rule of Civil Procedure 4(m) and 15(c) when Defendants produce a complete employment roster together with work dates and times for the period listed below and any documents demonstrating who had contact with Plaintiff.

10. The Defendants, John and Jane Doe Nurses, are employees and/or agents of Knox County, Tennessee yet to be identified who had contact with Plaintiff and based on that contact are proper Defendants in this matter based on the conduct described below. They are sued individually and in their official capacities. The names of these Defendants are unknown to Plaintiff but will be identified in accordance with Federal Rule of Civil Procedure 4(m) and 15(c) when Defendants produce a complete employment roster together with work dates and times for the period listed below and any documents demonstrating who had contact with Plaintiff.

11. The Defendants, John and Jane Doe Deputies, are employees and/or agents of Knox County, Tennessee yet to be identified who had contact with Plaintiff and based on that contact are proper Defendants in this matter based on the conduct described below. They are sued individually and in their official capacities. The names of these Defendants are unknown to Plaintiff but will be identified in accordance with Federal Rule of Civil Procedure 4(m) and 15(c) when Defendants produce a complete employment roster together with work dates and times for the period listed below and any documents demonstrating who had contact with Plaintiff.

12. The Defendants, John and Jane Doe Jailer/Guards, are employees and/or agents of Knox County, Tennessee yet to be identified who had contact with Plaintiff and based on that

3

contact are proper Defendants in this matter based on the conduct described below. They are sued individually and in their official capacities. The names of these Defendants are unknown to Plaintiff but will be identified in accordance with Federal Rule of Civil Procedure 4(m) and 15(c) when Defendants produce a complete employment roster together with work dates and times for the period listed below and any documents demonstrating who had contact with Plaintiff.

13.     The Defendant, John and Jane Doe Physician, is an employee and/or agent of Knox County, Tennessee yet to be identified who had contact with Plaintiff and based on that contact is a proper Defendant in this matter based on the conduct described below. He is sued individually and in his official capacity. The name of this Defendant is unknown to Plaintiff but will be identified in accordance with Federal Rule of Civil Procedure 4(m) and 15(c) when Defendants produce a complete employment roster together with work dates and times for the period listed below and any documents demonstrating who had contact with Plaintiff.

## II. JURISDICTION AND VENUE

14.     This court has jurisdiction to hear this cause pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is appropriate pursuant to 28 U.S.C. § 1391.

## III. FACTS

15.     On February 10, 2020, Plaintiff was arrested and booked into custody at the Knox County Detention Facility (hereinafter "KCDF") on criminal charges. The intake screening process took a few hours. Plaintiff was provided a jail uniform and other personal items and was then escorted down a hallway from booking, in a line with other inmates, to Pod VI for classification.

4

16.     Each KCDF pod has an entry way composed of two separate metal sliding doors that are controlled electronically by a pod deputy and/or jailer who is positioned at a central station further inside the respective pod.  To access a pod, an inmate walks through the outer sliding door, which then closes behind him.  Once both doors are closed, the pod's inner door is opened for the inmate to walk through.

17.     On or about February 10, 2020, Plaintiff, along with other inmates, walked through the outer sliding door on Pod VI.  Plaintiff was last in a line.  As he walked through the outer sliding door, he accidentally dropped his bag of personal items.  He reached back to grab his bag with his left arm as the sliding door closed.  He was not able to grab his bag in time and the door closed on arm, pinning him between the door and the wall.  Plaintiff remained pinned by the door for approximately 30 seconds.

18.     Plaintiff immediately felt a pop sensation in left bicep muscle and intense pain that radiated up his left arm into his shoulder.  Eventually, upon information and belief, the jailer/guard stationed at Pod VI opened the outer door which enabled Plaintiff to free himself.  The outer door was then closed, and the inner door opened so that Plaintiff and the other inmates could walk into Pod VI.

19.     At once, Plaintiff reported the incident and his injuries to the jailer/guard stationed in Pod VI, who advised Plaintiff to make a request for medical attention through the electronic kiosk system.  Plaintiff persisted that he needed medical attention immediately and the same jailer/guard told him that someone from medical would visit with him.  Plaintiff was then told to be quiet and to go to his designated cell to await classification.

20.     No medical staff visited with the Plaintiff that day and he remained in classification in Pod VI.  He was not able to immediately access the kiosk because the detention facility was, and remained for the duration of Plaintiff's incarceration, on 24-hour 'lock down', meaning inmates were kept in their cell for twenty-three hours per day and provided one hour out of their cell to tend to their personal affairs.

21.     Over the next approximately thirteen days, Plaintiff requested medical attention on numerous occasions and received neither a response from jailers/guards or KCDF medical staff nor medical care.  This included but is not limited to orally requesting medical care from the jailers/guards in Pod VI both in person when he was out of his cell, and remotely when he pressed a call button in his cell to request help from the Pod VI jailer/guard on duty.  Each time, Plaintiff was told by jailers/guards to file a medical request on the kiosk.

22.     Plaintiff also filed grievance reports, one through the kiosk and one handwritten and delivered to a Pod VI jailer/guard.  Plaintiff received no response or medical care.

23.     Plaintiff also accessed the kiosk, as ordered by jailers/guards on Pod VI, and filled out an emergency sick call request daily from February 11, 2020 to February 23, 2020.  He received no response from anyone.  At the same time, he continued to suffer intense pain and discomfort.

24.     On February 23, 2020, Plaintiff was seen by Nurse Steven Minton for a prescheduled physical examination.  Plaintiff advised Nurse Minton about his recent medical history and present condition.  Nurse Julie Newman ordered Nurse Minton to schedule a "stat appointment" with University Orthopedic Physicians, which was completed by Nurse Margaret McIntosh on March 5, 2020.  Nurse Margaret McIntosh also scheduled an appointment with Blount Orthopedic for March 9, 2020 to address a "possible left bicep retraction".  Plaintiff was

6

prescribed a single dose of two (2) 400 mg ibuprofen (over the counter strength) and moved to Pod IV with orders to sleep on the bottom bunk.

25. While Plaintiff remained in Pod IV, he had the following interactions with Knox County's medical staff over the next fourteen days:

a. On February 26, 2020, at 4:21 p.m., Plaintiff submitted a medical request on the kiosk. Physician's Assistant (hereinafter "P.A.") Macey Holt responded that same date, noting the referral and to remind Plaintiff that he was subject to a $10 fee for the visit and additional fees for additional treatment such as imaging studies. Plaintiff was thereafter prescribed a single dose of two (2) 400 mg ibuprofen.

b. On February 28, 2020, in an apparent response to a 'sick call request' from two days' prior, P.A. Macey Holt spoke with Plaintiff, who provided his recent medical history and told her that he had an appointment scheduled with an orthopedic surgeon. PA Holt increased Plaintiff's OTC 400 mg ibuprofen dosage to fourteen (14) refills. The collaborating physician was listed as "dkeeble", who upon information and belief is Dr. Donald Keeble, M.D.

c. On March 2, 2020, Plaintiff was seen by Nurse Julie Newman who noted in the chart, as a reminder to other staff, to request an appointment with an orthopedist as no appointment had been scheduled and Plaintiff continued to complain.

d. On March 5, 2020, Plaintiff filed another request for medical treatment through the kiosk, wherein he advised his continued progressive complaints of arm pain and raised questions about his medical care and belief he was supposed to have had surgery to repair his arm.

26. On March 9, 2020, Plaintiff was transported to Blount Orthopedic for an appointment, at which time P.A. Nathan Sayler diagnosed Plaintiff with a left distal bicep tendon rupture and prescribed an MRI to uncover how retracted the muscle had become. In Mr. Sayler's estimation, Plaintiff was not a candidate for surgical intervention and would simply have to live with this deformity.

7

27.     That same date, another medical service note was entered by KCSO staff, wherein

Nurse McIntosh requested on March 16, 2020 that someone verify whether Plaintiff's MRI and

follow up appointment had been scheduled; later this appointment was noted as scheduled on April

15, 2020.

28.     Upon return from this appointment, Plaintiff remained in Pod IV and had the

following interactions with Knox County's medical staff over the next forty-two days:

a. On March 20, 2020, Plaintiff again requested information on the status of his treatment and more ibuprofen through the kiosk system. That same date, PA Holt responded that his ibuprofen had been refilled and that he could also purchase ibuprofen with commissary "if needed."

b. On March 25, 2020, Plaintiff again requested information on the status of his treatment (surgery) and his complaints of progressive pain. That same date, PA Holt responded and advised that Blount Orthopedic requested an MRI, which was a prerequisite before proceeding to surgery.

c. On March 30, 2020, Plaintiff again requested information on the status of his treatment and registered complaints about pain and numbness in his left arm, lack of pain medication and poor diet. On March 31, 2020, PA Holt responded that the MRI had been ordered and scheduled separately from his appointments with Blount Orthopedic.

d. On April 11, 2020, Plaintiff again requested information on the status of his treatment and registered complaints about pain, numbness, and decreased range of motion in his left arm. That same date, Nurse Robinson responded to advise that his sick call had been triaged and referred to the clinic, and that additional charges (e.g. $10 fee) could apply. Later that same day, Plaintiff was seen by Nurse Harris, who noted Plaintiff's "obvious deformity" in left bicep muscle, his complaints of pain, and instructions were entered to restart ibuprofen for pain. On April 13, 2020, PA Holt prescribed a single dose of two (2) 400 mg ibuprofen with an order for ten (10) refills.

8

29.     On April 15, 2020, Plaintiff was transported and underwent an MRI of his left arm. The MRI report's impression was that Plaintiff's left bicep tendon was completely torn from its distal insertion site at the left elbow.

30.     On April 20, 2020, Plaintiff, with the assistance of his criminal defense counsel, entered a plea agreement and sentence in Knox County Criminal Court and was thereafter released from custody.

31.     On April 22, 2020, Plaintiff followed up with Blount Orthopedic to review the MRI findings.  PA Nathan Sayler concluded that surgical intervention to repair the bicep tendon was by that point not possible.  He ordered an EMG/nerve conduction study due to Plaintiff's complaints of numbness and tingling in his left upper extremity.  This test was performed on May 26, 2020. On June 4, 2020, Plaintiff was seen by PA Sayler to review the results, which were negative, and he was released from further treatment.

32.     As a direct result of the February 10, 2020 event, Plaintiff sustained approximately three thousand dollars ($3,000) in reasonable and necessary medical expenses, and contrary to state statutory and case law, Defendant Knox County has refused to make any payment to satisfy this sum or settle the bill in any way and Plaintiff is indebted for the same.   Upon information and belief, Plaintiff also sustained an unknown amount of other reasonable and necessary medical expenses during his period of incarceration between February 10, 2020 and April 20, 2020.  It is unknown whether Defendant Knox County has paid these expenses.

9

## IV. CAUSES OF ACTION

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Plaintiff avers that the individual Defendants[1] and Defendant Knox County violated his rights guaranteed to him by the 8th and 14th Amendments to the United States Constitution. At all times relevant hereto, Defendants Donald Keeble, Steven Minton, Margaret McIntosh, Julie Newman, Macey Holt, Martha Harris, Tyesha Anderson, and the individual John and Jane Doe Defendants were acting in the course and scope of their employment with Defendant Knox County.

35.     The Plaintiff avers that the individual Defendants and Defendant Knox County were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff avers that he had a sufficiently serious medical need as Dr. Mark Turner, M.D., and/or P.A. Nathan Sayler, diagnosed a torn left bicep tendon caused by Plaintiff's arm being crushed in a slider door on February 10, 2020, and his condition was so obvious that even laypersons would easily recognize the need for a doctor's attention.

Plaintiff communicated a request for medical treatment immediately after his arm injury on February 10, 2020, to Defendant John and Jane Doe jailers/guards in Pod VI. The medical clinic at KCDF was also located in Pod VI, only a few steps away from where Plaintiff's injuries occurred. Plaintiff avers that Defendant Knox County's employees did recognize the necessity of proper attention based upon their respective training and experience. However, the needs of Plaintiff were not addressed.

---

[1] Defendants Donald Keeble, M.D., Steven Minton, Margaret McIntosh, Julie Newman, Macey Holt, Martha Harris, Tyesha Anderson, and the individual John and Jane Doe Defendants.

10

36.     Plaintiff avers that Defendant Knox County and the named individual Defendants inferred the substantial risk to the medical health of Plaintiff as a result of his injury but disregarded the same creating a risk of serious harm to the Plaintiff for 69 days.

37.     Further, Plaintiff avers that Defendant Knox County did not have, or failed to train employees, including the named individual Defendants, regarding an emergency medical care protocol at the time of Plaintiff's injuries.  As a direct result, Plaintiff has sustained severe physical and mental pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, loss of earning capacity, and other related or like damages.

38.     Plaintiff avers that Defendant Knox County is directly liable for the violation of Plaintiff's 8th and 14th Amendment rights secured by the United States Constitution in that the Defendant's own policies, customs, and practices or lack thereof in this instance, were the moving force behind the violation of the aforesaid violation of Plaintiff's federal constitutional rights by the Defendant's employees and/agents, including the named individual Defendants, and the principles established by _Monell v. Dep't of Social Servs._, 436 U.S. 658 (1978) and its progeny. As a direct and proximate result, Plaintiff sustained severe physical and mental pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, loss of earning capacity, and other related or like damages due to the unconstitutional delay in getting appropriate medical treatment for Plaintiff's objectively serious medical condition.

39.     Plaintiff further avers that Defendant Knox County is directly liable for the violation of Plaintiff's 8th and 14th Amendment rights secured by the United States Constitution and the principles established by _Monell v. Dep't of Social Servs._, 436 U.S. 658 (1978) and _City of Canton, Ohio v. Harris_, 489 U.S. 378 (1989) and their progeny in that Knox County was

11

deliberately indifferent to the constitutional rights of the Plaintiff in the training and/or supervision of its employees, including the named individual Defendants, and in this regard was the moving force behind the violation of Plaintiff's federal constitutional rights.

40.     Plaintiff avers that the Defendant Knox County and Defendant Donald Keeble, M.D., failed to monitor its medical staff, including Defendants Steven Minton, Margaret McIntosh, Julie Newman, Macey Holt, Martha Harris, Tyesha Robinson, and the individual John and Jane Physician and Nurses, to ensure that inmates' medical needs were being met and that this failure was a moving force behind the violation of Plaintiff's constitutional rights.

41.     Plaintiff avers that the Defendant Knox County had a policy, custom, or practice of failing to discipline or terminate medical staff who were endangering the health, safety, and welfare of inmates with serious medical needs.  As a direct and proximate result, Plaintiff suffered severe physical and mental pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, loss of earning capacity, and other related or like damages due to the unconstitutional delay in getting appropriate medical treatment for his objectively serious medical condition.

WHEREFORE, Plaintiff Jason Johnson, demands judgment against Defendants Steven Minton, Donald Keeble, Margaret McIntosh, Julie Newman, Macey Holt, Martha Harris, Tyesha Robinson, the individual John and Jane Doe Defendants, and Knox County, for compensatory damages in an amount to be determined at trial, attorney fees and costs pursuant to 42 U.S.C. § 1988 and further demands a jury to try this cause.

Respectfully submitted this 9th day of February, 2021.

12

/s/ Forrest L. Wallace
Forrest L. Wallace (BPR# 028167)
Dawson & Wallace
100 W. Summit Hill Drive
Knoxville, Tennessee 37902
Phone: 865-525-7113
Fax: 865-963-0399
E-mail: fwallace@garydawsonlaw.com
Attorney for Plaintiff

13